Christine Wolk SBN 1001534
128 State Street, PO Box 1336
Oshkosh, WI 54903-1336
debtbuster@prodigy.net
Phone: 920-233-2500 x 3
Fax: 920-236-3308
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| **REBECCA A. WOLTRING,**<br>W1827 Van Ess Road<br>Oostburg, Wisconsin 53070<br>        Plaintiff<br>v.<br><br>**SPECIALIZED LOAN SERVICING, LLC**<br>8742 Lucent Blvd, Suite 300<br>Highlands Ranch, CO 80129<br>        Defendant | **Civil Case No.:**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL (Unlawful Debt Collection Practices)** |

## COMPLAINT

### I. INTRODUCTION

1. This action arises out of Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq*. ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive, and unfair debt collection practices.

### II. JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. §1692k(d) and 28 U.S.C. §1337. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. Venue in this District is proper in that the Defendant transacts business in the Eastern District of Wisconsin and the conduct complained of occurred in that district.

### III. PARTIES

3. Plaintiff **REBECCA WOLTRING** is natural person residing in Oostburg, Sheboygan County, Wisconsin.

1

4. Defendant **SPECIALIZED LOAN SERVICING, LLC ("SLS")** is an entity contracted to service mortgage loans, and in the case of Ms. Woltring, doing business as a default mortgage servicer that collects loan debts in this state with its principal place of business located at 8742 Lucent Blvd STE 300, Highlands Ranch, CO 80129-2386. The principal business of Defendant, SLS, is the collection of debts using the mails and telephone. Defendant SLS regularly attempts to collect debts alleged to be due another.

5. Defendant SLS is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

6. Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. 1692a(3).

7. The purported debt that Defendants attempted to collect from Plaintiff was a "debt" as defined by the FDCPA, 15 U.S.C. §1692a(5).

## IV. FACTUAL ALLEGATIONS

8. This is a complaint alleging a continuing violation of the FDCPA over a time period of several years ending with an overstated payoff letter dated March 4, 2013. WOLTRING has received a 1099-C that may also have overstated the amount of the mortgage debt. It has not been provided to counsel.

9. WOLTRING owned real estate that was located at W1827 West Van Ess Road, Oostburg, Wisconsin 53070. WOLTRING refinanced the real estate with Intervale Mortgage Company on July 13, 2006.

10. For the purposes of this action, it is necessary to know that the mortgage was in default and that after the default, the servicing of the mortgage was transferred several times after that default occurred.

11. At the time that the foreclosure action was filed against WOLTRING in Sheboygan County on January 23, 2007, the creditor owning the mortgage was alleged to be FV-1 and the servicer was Countrywide Home Loans, Inc – Fort Worth ("Countrywide"). The default was never cured.

12. Servicing was transferred to SLS from Countrywide via HSBC and Graystone Mortgage. SLS was the mortgage servicer at all pertinent times herein.

13. WOLTRING filed a Chapter 13 bankruptcy in 2007. The bankruptcy was dismissed and the state court foreclosure proceeded to trial on April 20, 2010. After supplemental briefs were filed, judgment was entered on August 4, 2010 in the amount of $476,840.72 as follows. The judgment was an amount less than the actual amount due and that created many of the problems that resulted in this claim against SLS.

14. WOLTRING believed that she had found a "hard money" investor in October 2010 and requested a payoff from SLS. WOLTRING was sent the attached Reinstatement Letter dated October 12, 2010. The amount was an "estimated reinstatement quote expires on October 27, 2010. This Reinstatement Amount included Miscellaneous Advances of $32,451.31.

15. A reinstatement quote provides the amount of funds to reinstate the mortgage to a current status pursuant to Uniform Covenant ¶ 19 of the mortgage. A payoff quote is necessary to pay the mortgage off in full, a right that WOLTRING had through her redemption period.

16. As WOLTRING had requested a payoff quote not a reinstatement quote, an "estimated payoff" was faxed to her attorney by letter dated October 29, 2010. A copy of this letter is attached hereto as Exhibit C. The payoff letter expired on November 3, 2010. In addition, the payoff quote differed from the reinstatement quote in the following categories:

| Category | Reinstatement 10/12/2010 | Payoff 10/29/2010 |
|---|---|---|
| BPO (Broker Price Opinion) | $ 525.00 | $ 410.00 |
| Miscellaneous Advances | 32,451.31 | 35,037.31 |
| Additional anticipated legal fees and costs | 330.00 | 0.00 |
| Property inspections | 11.35 | 0.00 |
| Suspense Balance credit | - 2,744.98 | 0.00 |
|  | $30,572.68 | $35,447.31 |
| Total amount requested | $166,248.25 | $555,091.83 |

**17.** WOLTRING returned to state court to contest the fees set forth in the aforementioned letter as the amount requested in the payoff letter as of November 3, 2010, exceeded the judgment entered on August 10, 2010 in the amount of $476,840.72 by $78,251.11. The state court held on December 23, 2010 that SLS could only add costs, interest and fees incurred post-judgment pursuant to Wis. Stat. § 846.13.

18. SLS was allowed to add $21,855.18 for real estate taxes advanced prior to entry of the judgment and $5,460.75 in interest accrued between the court's May 21, 2010 Decision and the entry of

3

judgment for a total of $504,156.65.

19. WOLTRING requested another payoff in January 2011. The payoff letter was issued by fax to WOLTRING'S attorney by letter dated January 26, 2011; the fax stamp in the header shows a date of o1/28/2011 and the "estimated payoff" expired on February 2, 2011. A copy of the letter is attached hereto as Exhibit C and incorporated herein by reference. Notwithstanding the court's direction, SLS requested a payoff of $560,973.77.

20. WOLTRING returned to court on March 18, 2011 regarding the payoff amount as a Sheriff's Sale was scheduled without notice to WOLTRING or her attorney, and WOLTRING was unwilling to pay more than she owed under the judgment. The payoff was received after the court dated, specifically, by letter dated April 6, 2011. This payoff identified Corporate Advances and Non Escrow Hazard Insurance previously identified as Miscellaneous Advances. The "estimated payoff" expired on April 20, 2011. A copy of the April 6, 2011 letter is attached hereto as Exhibit D and incorporated herein by reference.

21. The foreclosure judgment had identified the Non Escrow Hazard Insurance advance of $6,121.72 as Escrow Advances. This was the first time that WOLTRING was being assessed premium charges for hazard insurance.

22. By letter dated May 12, 2011 the Dave Lemmenes Agency verified that WOLTRING had paid the insurance premiums since 5/2007 which would have been all years due after the mortgage transaction closed. A copy of the May 12, 2011 letter including copies of the Declaration Pages, is attached hereto as E. The address listed for notice to the mortgage is the same address as that listed on the SLS Hazard Insurance letter dated September 29, 2011. A copy of this letter is attached as Exhibit F and incorporated herein by reference.

23. On or about June 28, 2011, WOLTRING negotiated a short pay-off with SLS that required a $15,000 down payment with $500,000 due two days before the Sheriff's Sale. The $15,000 was paid. SLS then started to contact WOLTRING directly regarding her mortgage arrearage. SLS knew that WOLTRING

4

was represented by an attorney.

24. On or about August 6, 2011, SLS sent an agent to WOLTRING's home. WOLTRING'S son was getting married that day and the wedding party was doing set up photographs on the front porch along with the photographer and the photographer's assistant. Eleven people in all were present. Many cars were parked around the residence. It is obvious that this is a special occasion.

25. The SLS agent approached WOLTRING and, in a voice loud enough to be heard and understood clearly by all in attendance, informed WOLTRING that she needed to contact SLS to make arrangements to cure the arrearage on her mortgage.

26. After the making of this pronouncement, the SLS agent takes the envelope that he has with WOLTRING's name on it, licks the envelope, and attaches it to the message inside so that it cannot be read and, to this date, attempts to separate the envelope from the message have not succeeded. A copy of what can be read is attached hereto and incorporated herein by reference as Exhibit G.

27. As a result of the acts of SLS, WOLTRING was humiliated, embarrassed and suffered emotional distress. Her son informed her that she had ruined his wedding and certainly, WOLTRING suffered the indignity of the spectacle in which she had involuntarily starred.

28. WOLTRING was both convinced that she would not be able to secure to obtain financing without a definitive and consistent payoff number, AND unwilling to pay SLS one dime more than it was owed as she was convinced that any effort to obtain a refund would be a battle.

29. WOLTRING was also unable to obtain the $500,000 due to investor reluctance at this point, WOLTRING filed her second Chapter 13 to stop the August 2011 foreclosure, Case No. 11-32629-mdm.

30. SLS filed a Proof of Claim for an arrearage (aka "reinstatement") in the amount of $171,255.33. A copy of the Proof of Claim (Claim 3) is attached hereto as Exhibit H and incorporated herein by reference.

31. This Proof of Claim reinserted the insurance premiums for the years that WOLTRING had provided insurance in the amount of $6,121.72. Multiple requests were made for details of this payment(s) by SLS. None was ever provided.

32. The Proof of Claim also listed BPO/Appraisal costs of $1,985.00. A request for a copy of the appraisal was made pursuant to Wis. Stat. § 224.25 by email to counsel for SLS on 12/13/2011. § 224.25 provides that a customer may have a written copy of any appraisal for which the customer is assessed a fee. No appraisal was ever provided.

33. The Proof of Claim included interest that had been excluded by the state court when it entered the foreclosure judgment. A credit had been given for the pre-petition payment of $15,000.

34. WOLTRING objected to the Proof of Claim. A copy of the Objection is attached hereto as Exhibit I and is incorporated herein by reference. The total amount of the overstatement of the amount due was $40,000. (Ex. I, p. 3) SLS agreed to the WOLTRING calculation, but, only for the purposes of the bankruptcy. The Agreed Order is attached hereto as Exhibit J and incorporated herein by reference.

35. The 2011 Chapter 13 failed as WOLTRING continued to try and market her land and refinance the home (real estate consisted of residence plus acreage and other separate adjoining parcels).

36. WOLTRING filed another Chapter 13 in 2012, Case No. 12-33133-mdm. This time WOLTRING had obtained financing for a new business venture and was able to commit and pay a $33,000 payment to SLS. SLS did not file a Proof of Claim in this case.

37. WOLTRING was unable to make a second lump sum payment as her health failed. It is incontrovertible that the ongoing stress, including, but, not limited to, the frustration in trying to save her home and get a consistent and honest payoff commitment had taken an emotional toll on her. She was unable to work. The 2012 Chapter 13 failed.

38. With the rescheduling of the Sheriff's Sale, WOLTRING continued her efforts to refinance, or, at least find a friendly buyer and needed a payoff statement.

6

39. Counsel for SLS was reluctant to give a written payoff commitment as he knew that the statement would be scrutinized.

40. A written "estimated payoff" dated March 4, 2013 was provided that expired on March 20, 2013. As before, WOLTRING was to call before any payoff to get the current payoff which was still "subject to final verification by the Noteholder". A copy of the March 4, 2013 estimated payoff is attached hereto as Exhibit K and incorporated herein by reference. The $33,000 paid by WOLTRING appears to have been applied to a variety of categories, including reimbursement of the hazard insurance premiums that were previously disallowed.

41. UNIFORM COVENANT 2 of the mortgage dictated that payments be applied in the order of interest due under the note, then principal, than any amounts due for escrow.

42. The actual balance due as of August 15, 2011 was $508,112.23 (Exhibits I & J). The balance increased to $553,606 as of March 20, 2013 (Ex. K). Interest accrued on the principal balance of $399,648.81 at 6.65% per annum or $72.813 per diem for 582 days for additional accrued interest of $42,377.17.

43. The final "estimated payoff" dated March 4, 2013, when compared to WOLTRING's calculation which is based on the foreclosure judgment that was entered, overstates the balance due by $36,116.53. And, even the inclusion of an extra year of real estate taxes advanced, would not make up the difference in the calculation below.

   $508,112.23   Agreed balance as of 8/15/2011 (limited to 2011 bankruptcy)

    <u>42,377.17</u>   Interest at 72.813 per diem from 8/15/2011 – 3/20/2013   582 days

$ 550, 489.40   Total as of 3/20/2013

-  <u>33,000.00</u>  Paid in 2012 bankruptcy

$  517,489.40

44. SLS has issued an IRS form 1099 for this transaction in 2014 and it is believed to include the balance due calculated using its inflated figures.

## V. FIRST CLAIM FOR RELIEF

### (Violation of FDCPA)

45. Plaintiff repeats and realleges and incorporates by reference all of the foregoing paragraphs.

46. Defendant violated the FDCPA by the above-described actions. Defendant's violations constitute a continuing violation that began in 2010 violations include, but are not limited to, the following:

- (A) Defendant violated 15 U.S.C. §c(a)(2) by communicating with the Plaintiff after knowing that Plaintiff was represented by an attorney.
- (B) Defendant violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which was to harass, oppress, and abuse Plaintiff.
- (C) Defendant violated 15 U.S.C. §1692e(2)(A) and §1692f(1) by creating by misrepresentation of the amount of the debt owed.
- (D) Defendant violated 15 U.S.C. §1692e by making the misrepresentations alleged above.
- (E) Defendant violated 15 U.S.C. §1692c(a)(1) and (b) by communicating with the Plaintiff at an unusual or inconvenient place or time, that is, her son's wedding, in front of the wedding party.

47. As a result of the above violations of the FDCPA, Defendant is iable to the Plaintiff for declaratory judgment that Defendant's conduct violated the FDCPA, and actual damages, statutory damages, and attorney's fees and costs pursuant to 15 U.S.C. §1692k.

## VI. SECOND CLAIM FOR RELIEF

### (Invasion of Privacy by Intrusion on Seclusion)

48. Plaintiff repeats and realleges and incorporates by reference all of the foregoing paragraphs.

49. Defendant willfully performed the aforesaid acts with the intent to abuse and coerce and create great mental and physical pain and damage to Plaintiff.

50. Plaintiff did in fact experience great mental and physical pain as a result of the acts of Defendants as alleged above.

8

38. Defendant acted with oppression, fraud or malice, and Defendant is therefore liable to Plaintiff for damages in an amount to be proven at trial, and for punitive damages.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants and each of them for the following:

    A. Declaratory judgment that Defendant's conduct violated the FDCPA;

    B. Actual damages pursuant to 15 U.S.C. § 1692k;

    C. Statutory damages pursuant to 15 U.S.C. §1692k;

    D. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692k;

    E. For punitive damages.

    F. For such other and further relief as the Court may deem just and proper.

Dated 3/1/2014

                                                      ____/s/ Christine Wolk_____
                                                      Christine Wolk, Attorney for Plaintiff