# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

REBECCA A. WOLTRING,,

                **Plaintiff,**

       v.                                                                        Case No. 14-CV-222

SPECIALIZED LOAN SERVICING, LLC,

                **Defendant.**

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION TO DISMISS

### I.    Facts and Procedural History

Rebecca A. Woltring ("Woltring") stopped making payments on her mortgage, leading the creditor holding that mortgage note to initiate a foreclosure action on January 23, 2007. (Docket No. 1, ¶¶ 10-11.) The foreclosure action dragged on for years, in part as a result of Woltring repeatedly filing eleventh hour bankruptcy petitions after a latest effort to rectify the default fell through for one reason or another. Each time, the bankruptcy petition was dismissed, see 07-26461-mdm, 11-32629-mdm, 12-33133-mdm (E.D. Wis. Bankr.), and after the third such filing, the bankruptcy court barred Woltring from filing any further bankruptcy actions for two years absent prior leave of the court, In re Woltring, No. 12-33133 (E.D. Wis. Bankr. Feb. 8, 2013), ECF No. 39. The foreclosure action culminated in an order on April 22, 2013 confirming the sheriff's sale. (Docket No. 12-4.)

Woltring filed the present action on March 1, 2014 alleging that the defendant, Specialized Loan Servicing, LLC, ("SLS"), violated the Fair Debt Collection Practices Act ("FDCPA") in various actions it took during the foreclosure proceedings. (Docket No. 1.) Woltring's complaint also includes a claim for invasion of privacy by intrusion on seclusion, which the court presumes is brought pursuant to Wis. Stat. § 995.50. (Docket No. 1.)

Rather than filing an answer, the defendant filed a motion to dismiss. (Docket No. 10.) The plaintiff responded, (Docket No. 15), and the defendant replied, (Docket No. 18). The pleadings on this motion are closed and the matter is ready for resolution. The parties previously consented to the full jurisdiction of a magistrate judge. (Docket Nos. 2, 5, 9.)

**II.     Motion to Dismiss Standard**

The defendant moved to dismiss pursuant to Fed. R. Civ. 12(b)(1) on the basis the court lacks subject matter jurisdiction over the plaintiff's complaint. Alternatively, the plaintiff argues that dismissal under Rule 12(b)(6) is appropriate because the plaintiff's claims are barred under the doctrine of claim preclusion or certain of the plaintiff's claims are untimely under the statute of limitations.

As with any motion to dismiss, whether under Rule 12(b)(1) or 12(b)(6), the court accepts as true the factual allegations contained in the complaint and draws all reasonable inference in favor of the plaintiff. Hammond v. Clayton, 83 F.3d 191, 192 (7th Cir. 1996).

With respect to a motion to dismiss under Rule 12(b)(1), the court may consider matters outside the pleadings. Capitol Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir. 1993) (citing Grafon Corp. v. Hausermann, 602 F.2d 781, 783 (7th Cir. 1979). However, generally, if a court considers matters outside the pleadings on a motion to dismiss under Rule 12(b)(6), the court must treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d). Here, both parties

have presented matters outside the pleadings. (Docket Nos. 12-1 – 12-20; 15-1 - 15-4.) However, a narrow exception applies for matters that may be subject to judicial notice under Fed. R. Evid. 201. Ennenga v. Starns, 677 F.3d 766, 773 (7th Cir. 2012). The defendant argues that this exception applies because the documents submitted are public records. (Docket No. 18 at 2, fn. 1.)

Although it is too simplistic to say that a matter is appropriate for judicial notice because it is a public record (at least as the term "public record" is colloquially utilized), the court concludes that the documents submitted here, given the context and purposes for which they were submitted, are appropriately subject to judicial notice under Rule 201. The defendant presents only the records of other courts. Federal courts have routinely regarded the docket or pleadings from other judicial proceedings as appropriate for judicial notice under Rule 201. Ideal Instruments, Inc. v. Rivard Instruments, Inc., 434 F. Supp. 2d 598, 618 n.5 (N.D. Iowa 2006) (citing cases); see also United States v. Doyle, 121 F.3d 1078, 1088 (7th Cir. 1997); Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994).

But simply because a matter was previously submitted to another court does not mean that it is subject to judicial notice for all purposes. It is possible for this court to review matters filed in other courts and take judicial notice of certain facts such as the date a matter was filed, the claims alleged in a complaint or relief sought in a motion, or the court's resolution of a matter. But it would not necessarily be appropriate to look to matters such as letters attached to a pleading and take judicial notice of the truth of the matters asserted in those hearsay statements.

Thus, notwithstanding the submission of documents outside the pleadings, based upon the court's analysis set forth below, the court finds it unnecessary to convert the present motion to dismiss under Rule 12(b)(6) to one for summary judgment.

3

### III. Analysis

#### a. <u>Rooker-Feldman</u> Doctrine

The <u>Rooker-Feldman</u> doctrine, <u>see</u> <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 486 (1983), bars "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced" from pursuing an action asking the federal court to review and reject those judgments. <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005). Not only are direct attacks upon state court judgments barred by the <u>Rooker-Feldman</u> doctrine but so too are claims that are "inextricably intertwined with the state-court judgment…." <u>Lewis v. Anderson</u>, 308 F.3d 768, 772 (7th Cir. 2002). In determining whether a claim is inextricably intertwined, the crucial question is whether the court is, in essence, being called upon the review that state court judgment. <u>Manley v. City of Chicago</u>, 236 F.3d 392, 396 (7th Cir. 2001) (quoting <u>Garry v. Geils</u>, 82 F.3d 1362, 1369 (7th Cir. 1996)).

The <u>Rooker-Feldman</u> doctrine is distinct from the principles of issue or claim preclusion. Unlike issue or claim preclusion, which are governed by state law, <u>Exxon</u>, 544 U.S. at 294; <u>In re Dollie's Playhouse, Inc.</u>, 481 F.3d 998, 1000 (7th Cir. 2007), the <u>Rooker-Feldman</u> doctrine is founded in the fact that the United States Supreme Court is the only federal court authorized to review the judgments of state courts and thus is jurisdictional, <u>Manley</u>, 236 F.3d at 396.

FDCPA claims will often emerge from efforts to collect on state court judgments. Yet the defendant has not directed the court to any case wherein a court held that an alleged violation of the FDCPA in the collection of that debt was barred by the <u>Rooker-Feldman</u> doctrine.

Here, however, Woltring did explicitly allege in post-judgment proceedings in the state foreclosure action that the plaintiff in that action violated the FDCPA. Specifically, in a "motion

4

for determination of amount to redeem judgment of foreclosure" filed on December 10, 2010, she stated that it is her position that "the plaintiff has overstated the amount owed and that she is not only entitled to actual damages, a penalty of no less than $100 or more than $1,000.00, and attorney fees and costs pursuant to 15 U.S.C. § 1692k." (Docket No. 12-11 at 5). This appears to be largely an afterthought, tacked onto a closing paragraph wherein Woltring requested attorney's fees for bringing her motion. Notably, relief under the FDCPA was not included in the relief she requested in that motion. (Docket No. 12-11 at 2.) It is also unclear whether the state court could have ordered such relief by way of an order on a post-judgment motion. Woltring now seems to acknowledge that her reference to the FDCPA was improper and, in fact, because the motion was brought against Consumer Solutions, LLC, who was a creditor rather than a debt collector and thus not covered by the FDCPA, meritless.

The court concludes that the Rooker-Feldman doctrine does not deprive the court of jurisdiction to hear the plaintiff's present claim. The claims raised here are distinct from those resolved in the state foreclosure action. The state court judgment, (Docket No. 12-2 at 2-6), did not determine whether the defendant in this action violated the FDCPA. It necessarily could not have given that the judgment predated all the alleged FDCPA violations. Nor did Woltring's reference to the FDCPA in a post-judgment motion result in a judgment of the state court that deprives this court of jurisdiction. To the extent that the plaintiff's reference in the motion might be construed as a request for relief, it was improperly presented and unrelated to the substantive relief requested in the motion, and thus was appropriately ignored by the state court. Relevant here, the state court judgment determined only the amount of Woltring's debt. (Docket No. 12-2 at 6.) While this determination is relevant to the factual dispute of whether SLS violated the FDCPA by misstating the amount of the debt, the resolution of the plaintiff's FDCPA claim will

5

not and could not include a recalculation of this amount of the judgment. No matter the outcome of this case, the state court judgment shall stand undisturbed.

Finally, the court rejects the defendant's argument that the circuit court's order confirming the sheriff's sale, (Docket No. 12-4), deprives this court of jurisdiction. Because the creditor was precluded from pursuing a deficiency judgment, (see Docket No. 12-2 at ¶12), this sale, the net proceeds of which totaled $495,192.48, resolved the matter for less than the amount even the plaintiff appears to acknowledge she owed. (Docket No. 1, ¶43.) The confirmation of sale order did not determine what was actually owed, nor confirm that the amount SLS sought in its prior reinstatement letters was correct. However, this order did necessarily indicate that the amount owed was at least $495,192.48; if the amount owed had been less, that surplus of proceeds would have been "subject to further order of" the circuit court, (Docket No. 12-2, ¶6). But this is apparently not in dispute. Thus, no decision in this court shall require this court to reject any decision of the circuit court.

### b. Claim Preclusion

"The doctrine of claim preclusion provides that a final judgment on the merits in one action bars parties from relitigating any claim that arises out of the same relevant facts, transactions, or occurrences." Kruckenberg v. Harvey, 2005 WI 43, ¶19, 279 Wis. 2d 520, 694 N.W.2d 879. This includes not only claims that were actually litigated in the prior action but also claims that might have been litigated in those proceedings. Id.

Here, the foreclosure action and the present action both have their roots in the mortgage loan. However, the court finds that this commonality is insufficient to bar the present action under the doctrine of claim preclusion. There is not "such a measure of identity of claims that a

6

judgment in the second in favor of the plaintiff would appear to impair the rights or interests established in the first judgment." Id. at ¶33.

Notably, the allegations that form the basis for Woltring's present claims relate to conduct that occurred after the entry of judgment in the foreclosure action. While it might have been possible through extraordinary means to have litigated her present claims in the state court through some sort of post-judgment supplemental proceeding, SLS fails to explain to the court how Woltring could have presented the present claims as part of the foreclosure action.

The primary case upon which the defendant relies, Dye v. Ameriquest Mortg. Co., 289 Fed. Appx. 941 (7th Cir. 2008), is not only readily distinguishable but unpublished and thus non-precedential. In that case, the Court of Appeals for the Seventh Circuit held that the plaintiffs were precluded from bringing a Truth in Lending Act ("TILA") claim in federal court because they could have brought that claim in a prior state foreclosure action. Id. at 944. Unlike here, the TILA claim in Dye existed before the entry of judgment in the foreclosure action and granting the plaintiffs the relief they sought in the federal court action, i.e. rescission of the mortgage that established the basis for the foreclosure, would have impaired the rights or interests established in the state court judgment.

### c. Statute of Limitations

Ordinarily, a claim under the FDCPA must be filed within one year of the alleged violation. 15 U.S.C. § 1692k(d). Nearly all of the allegations in the complaint relate to conduct occurring more than a year before the plaintiff filed the present complaint. Nonetheless, the plaintiff argues that none is time-barred because the violations collectively constituted a single continuing violation, part of which occurred within a year before the filing of the complaint. (Docket No. 15 at 15.)

7

The statute of limitations is an affirmative defense. Reiser v. Residential Funding Corp., 380 F.3d 1027, 1030 (7th Cir. 2004). A complaint is not deficient and subject to dismissal under Rule 12(b)(6) simply because the plaintiff in her complaint failed to anticipate and negate a statute of limitations defense. Thus, the statute of limitations is rarely a good reason to dismiss a claim under Rule 12(b)(6). Id. (citing Xechem, Inc. v. Bristol-Myers Squibb Co., 372 F.3d 899 (7th Cir. 2004)). However, a plaintiff may plead herself out of court if she admits in her complaint all the ingredients of an impenetrable statute of limitations defense. Xechem, Inc. v. Bristol-Myers Squibb Co., 372 F.3d 899, 901 (7th Cir. 2004); see also Small v. Chao, 398 F.3d 894, 898 (7th Cir. 2005) (citing Perry v. Sullivan, 207 F.3d 379, 382 (7th Cir. 2000)). Thus, at the motion to dismiss stage, "the question is only whether there is any set of facts that if proven would establish a defense to the statute of limitations." Clark v. City of Braidwood, 318 F.3d 764, 768 (7th Cir. 2003) (citing Early v. Bankers Life and Casualty Co., 959 F.2d 75, 80 (7th Cir. 1992)).

The plaintiff fails to cite in support of her continuing violation argument any precedent that is binding upon this court. Instead, the plaintiff cites the decisions of other district courts, all of which are outside of the Seventh Circuit. (Docket No. 15 at 16-17 (citing Devlin v. Law Offices Howard Lee Schiff, P.C., CIV.A. 11-11902-JGD, 2012 WL 4469139 (D. Mass. Sept. 25, 2012); Hockenhull v. Law Office Howard Lee Schiff, P.C., CA 12-415 S, 2012 WL 6525504 (D.R.I. Dec. 13, 2012); Joseph v. J.J. Mac Intyre Companies, L.L.C., 281 F. Supp. 2d 1156 (N.D. Cal. 2003); Padilla v. Payco Gen. Am. Credits, Inc., 161 F. Supp. 2d 264 (S.D.N.Y. 2001)).) A review of these cases reveals a split of authority on the question of whether a continuing violation might extend the statute of limitations in a FDCPA case. See Devlin, 2012 WL 4469139, 7.

The Northern District of California, analogizing to a hostile work environment claim, concluded that if the "conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts … then the suit is timely 'if the action is filed within one year of the most recent date on which the defendant is alleged to have violated the FDCPA.'" Joseph, 281 F. Supp. 2d at 1161 (quoting Padilla, 161 F. Supp. 2d at 273). This analogy is apt in some respects. Just as a worker might be able to shrug off a single inappropriate comment, a debtor might be able to ignore an isolated misleading debt collection letter. But a pattern of ongoing harassment is more difficult to ignore, leading an employee to leave a job or a debtor to be bullied into paying an invalid debt. However, as the court in Joseph acknowledged, the analogy is imperfect. Unlike a hostile work environment claim where a pattern of conduct is generally necessary to sustain a claim, a single misleading letter standing alone constitutes a violation of the FDCPA.

Nonetheless, "[f]or statute-of-limitations purposes, discrete violations of the FDCPA should be analyzed on an individual basis." Arvie v. Dodeka, LLC, CIV.A. H-09-1076, 2010 WL 4312907 (S.D. Tex. Oct. 25, 2010) (quoting Solomon v. HSBC Mortgage Corp., 395 F. App'x 494, 497 (10th Cir. 2010) (unpublished)). Certain conduct is more readily identifiable as a continuing pattern rather than unrelated discrete acts. For example, if a debt collector sends essentially the same threatening letter over and over, see Sierra v. Foster & Garbus, 48 F. Supp. 2d 393, 395 (S.D.N.Y. 1999), or undertakes a steady stream of hundreds of calls in a 19-month period, see Joseph v. J.J. Mac Intyre Cos., L.L.C., 281 F. Supp. 2d 1156, 1161-62 (N.D. Cal. 2003), it might be more easily seen as a single continuing violation of the FDCPA. But the line between distinct and continuing violations may be unclear.

Other court have rejected the continuing violation theory under the FDCPA. Wilhelm v. Credico Inc., 455 F. Supp. 2d 1006, 1009 (D.N.D. 2006) (citing Kirscher v. Messerli & Kramer P.A., 2006 U.S. Dist. LEXIS 3346 (D. Minn Jan. 18, 2006); Fraenkel v. Messerli & Kramer. P.A., 2004 U.S. Dist. LEXIS 15196 (D. Minn. July 29, 2004); Akalwadi v. Risk Management Alternatives, Inc., 336 F. Supp. 2d 492, 501 (D. Md. 2004); Flores v. Millennium Interests LTD, 273 F. Supp. 2d 899, 901 (S.D. Texas 2003); Sierra v. Foster & Garbus, 48 F. Supp. 2d 393, 395 (S.D.N.Y. 1999)); see also Calka v. Kucker, Kraus & Bruh, LLP, 1998 U.S. Dist. LEXIS 11868, 9 (S.D.N.Y. July 29, 1998).

It is the conclusion of this court that a continuing violation is a narrow and limited exception to the FDCPA's one-year statute of limitations. A continuing violation does not exist simply because a plaintiff can piece together a string of alleged violations of the FDCPA, between which there is never a span of more than a year. See Sierra, 48 F. Supp. 2d at 395. A continuing violation requires more. The violations must generally be of the same kind. Thus, incessant harassing phone calls may constitute a continuing violation. But if amidst this stream of harassing phone calls there was a letter than contained a misrepresentation, the fact of the ongoing telephone harassment will not extend the statute of limitations for the distinct claim related to the misrepresentation in the letter, notwithstanding the fact that both were related to efforts to collect the same debt.

Having thoroughly reviewed the complaint, the court concludes that the plaintiff alleges numerous discrete violations of the FDCPA rather than a single continuing violation. The following is a summary of the relevant facts contained in Woltring's complaint.

Woltring requested a payoff letter from SLS and received a reinstatement letter dated October 12, 2010. (Docket Nos. 1, ¶14; 1-1 at 1.) Woltring then received a payoff quote dated

October 29, 2010 that differed from the prior reinstatement quote. (Docket Nos. 1, ¶16; 1-1 at 2 (this is Exhibit B to the complaint but is incorrectly identified in paragraph 16 of the complaint as Exhibit C).) Woltring returned to state court to resolve this dispute as to what she actually owed and the state court resolved the matter on December 23, 2010. (Docket No. 1, ¶17.) Woltring requested and received a third payoff letter and her attorney received a letter via fax dated January 26, 2011. (Docket Nos. 1, ¶ 19; 1-1 at 3**.**). Woltring alleges the amount sought in this letter was inconsistent with the order of the state court and thus Woltring again returned to state court on March 18, 2011. Afterwards, she received a fourth letter dated April 6, 2011. (Docket Nos. 1, ¶20; 1-1 at 4.) Around the end of June 2011, SLS began to contact Woltring directly regarding negotiations of short pay-off. (Docket No. 1, ¶23.) On August 6, 2011, SLS sent an agent to Woltring's home when Woltring's son was taking photographs for his wedding. (Docket Nos. 1, ¶¶ 24-27; 1-1 at 7.) Subsequent proceedings in the bankruptcy court resulted in what Woltring regarded as SLS making incorrect claims. (Docket Nos. 1, ¶¶ 30-34; 1-1 at 8.) A fifth and final payoff letter was dated March 4, 2013, (Docket Nos. 1, ¶40, 1-1 at 15), and Woltring again alleges that the amount sought in this letter was inaccurate, (Docket No. 1, ¶43).

> In her first claim for relief, the plaintiff alleges the following violations of the FDCPA:
>
> (A) Defendant violated 15 U.S.C. §c(a)(2) [sic] by communicating with the Plaintiff after knowing that Plaintiff was represented by an attorney.
> (B) Defendant violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which was to harass, oppress, and abuse Plaintiff.
> (C) Defendant violated 15 U.S.C. §1692e(2)(A) and §1692f(1) by creating by misrepresentation of the amount of the debt owed.
> (D) Defendant violated 15 U.S.C. §1692e by making the misrepresentations alleged above.
> (E) Defendant violated 15 U.S.C. §1692c(a)(1) and (b) by communicating with the Plaintiff at an unusual or inconvenient place or time, that is, her son's wedding, in front of the wedding party.

(Docket No. 1, ¶46.)

The violations alleged in sections (A) and (E) of paragraph 46 of the complaint relate the events occurring in the summer of 2011 and discussed in paragraphs 23 through 27 of the complaint. These are plainly distinct violations of the FDCPA in that they are of a distinct kind and nature. Having occurred more than one year before the filing of the present complaint, they are barred by the statute of limitations.

The remainder of Woltring's FDCPA claims relate to the allegedly inaccurate payoff or reinstatement letters Woltring received. It is unclear whether Woltring intended certain other factual assertions in her complaint as alleged violations of the FDCPA, e.g. an allegedly inaccurate proof of claim submitted in a bankruptcy proceeding, (Docket Nos. 1, ¶¶ 30-34; 1-1 at 8-9), or if she included this information simply as means of supporting her other allegations. In any event, these actions are distinct from any alleged violation of the FDCPA occurring within one year of the filing of the present complaint, and therefore barred by the statute of limitations.

The court's analysis turns to the March 4, 2013 letter, (Docket No. 1-1 at 15), a letter that the defendant acknowledges is timely under the statute of limitations, (Docket No. 11 at 17). Only if this letter can be regarded as a continuation of the alleged violations set forth in the prior letters could those alleged violations of the FDCPA occurring more than a year before the filing of the complaint be timely.

It is exceptionally difficult to characterize an alleged violation as "continuing" when nearly two years separated the March 4, 2013 letter, (Docket No. 1-1 at 15), and the immediately preceding letter dated April 6, 2011, (Docket No. 1-1 at 4). This was not a litigant faced with a year of daily or even weekly harassing phone calls. To the contrary, Woltring received a total of five payoff letters sporadically over the span of three years, and notably only then when she explicitly requested them. This fact, standing alone, would be sufficient for the court to find that

the violations alleged here were not continuing. But additionally, the fact that Woltring disagreed with the amount requested for one reason or another does not somehow suggest a continuing violation. For example, Woltring's objection to the April 6, 2011 letter, (Docket No. 1-1 at 4), was that it included hazard insurance that she had paid. (Docket No. 1, ¶¶21-22.) Woltring alleges prior letters were inaccurate because they sought to recover costs incurred before the entry of the foreclosure judgment but not included in that judgment. (Docket No. 1 at ¶¶16-20.) These alleged violations are recognizable as distinct. The commonality of the fact that each led to what Woltring regards as an incorrect estimated payoff amount is insufficient to establish an ongoing violation.

Finally, the only other action contained within the complaint that the plaintiff alleged occurred within one year of the present complaint is the defendant's issuance of a 1099-C Cancellation of Debt form. Again, it is not clear from the complaint or the plaintiff's response to the defendant's motion to dismiss whether Woltring alleges that the 1099-C violated the FDCPA. In any event, the court concludes that as a matter of law, the issuance of an inaccurate 1099-C does not violate the FDCPA.

The FDCPA prohibits certain practices "in connection with the collection of a debt." 15 U.S.C. §§ 1692c – 1692e. Some courts have concluded that the issuance of a 1099-C cannot form the basis for a violation of the FDCPA because a 1099-C evidences that there is no longer any collectible debt. See Gorbaty v. Portfolio Recovery Assocs., 355 Fed. Appx. 580, 582 (3d Cir. 2009) (unpublished); Posso v. ASTA Funding Inc., 2007 U.S. Dist. LEXIS 83741, 8-9 (N.D. Ill. Nov. 9, 2007). However, this conclusion that a debt is no longer collectible following the issuance of a 1099-C appears to be in conflict with the Internal Revenue Service's interpretation of its own rules. See IRS Info 2005-0207, 2005 WL 3561135 ("The Internal Revenue Service

does not view a Form 1099-C as an admission by the creditor that it has discharged the debt and can no longer pursue collection."); IRS Info 2005-0208, 2005 WL 3561136 ("Section 6050P and the regulations do not prohibit collection activity after a creditor reports by filing a Form 1099-C."). Nonetheless, a 1099-C remains outside of the FDCPA because, irrespective of whether further collection efforts may be possible, the 1099-C itself is not made "in connection with the collection of a debt." Here, the 1099-C truly did mark the cessation of debt collection efforts because with the issuance of the order confirming the sheriff's sale, (Docket No. 12-4), and the foreclosure judgment precluding the creditor from pursuing a deficiency judgment, (Docket No. 12-2, ¶12), further debt collection efforts would not have been possible.

IV.     **Conclusion**

For the reasons set forth above, the court shall grant in part and deny in part the defendant's motion to dismiss. The court concludes that the Rooker-Feldman doctrine does not deprive this court of jurisdiction. No decision or resolution related to the plaintiff's present complaint will upset or undermine any decision or judgment of the state court. Nor does the court find that the doctrine of claim preclusion bars the plaintiff's present action. The defendant has failed to show that the claims the plaintiff presents here were or should have been resolved in the prior state court proceeding. However, the court does find that many of the claims contained in the plaintiff's complaint are barred under the one-year statute of limitations set forth in 15 U.S.C. § 1692k(d). The claims alleged in the complaint are distinct and thus not a single continuing violation. Therefore, alleged violations of the FDCPA that occurred within one year of the filing of the present complaint may form the basis for relief. Accordingly, the only FDCPA claim or claims that shall remain in this action is any claim related to the payoff letter dated March 4, 2013, (Docket No. 1-1 at 15). Finally, the second claim for relief contained in the

plaintiff's complaint, regarding invasion of privacy by intrusion on seclusion, was not substantively separately addressed in the defendant's motion and thus is not dismissed.

**IT IS THEREFORE ORDERED** that the defendant's motion to dismiss is granted in part and denied in part. It is granted on the ground that the statute of limitations bars any claim under the Fair Debt Collection Practices Act other than a claim or claims related to the letter dated March 4, 2013, (Docket No. 1-1 at 15), and denied on all other grounds.

The court will conduct a telephone scheduling conference to discuss discovery and further pretrial case management on **Tuesday, July 1, 2014** at 9:00 a.m. The court will place the call.

Dated at Milwaukee, Wisconsin this 16th day of June, 2014.

_____
AARON E. GOODSTEIN
U.S. Magistrate Judge